**SO ORDERED.**

**SIGNED this 11 day of January, 2013.**

_J. Rich Leonard_
**J. Rich Leonard**
**United States Bankruptcy Judge**

---

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

**IN RE:**

| | |
|---|---|
| **NICHOLAS DAVID BALLEW** | **CASE NO. 12-04059-8-JRL** |
| **SCOTT ELLIS BANKS** | **CASE NO. 12-03988-8-JRL** |
| **KENNETH RAY CLARK AND**<br>**BEVERLY MCKOY CLARK** | **CASE NO. 12-00639-8-JRL** |
| **JAMES DODSON** | **CASE NO. 12-04573-8-JRL** |
| **LAURIE LYNN EVANS** | **CASE NO. 12-04798-8-JRL** |
| **KELLY MARIE GOODE** | **CASE NO. 12-04779-8-JRL** |
| **ROBERT GLENN JOHNSON, JR.**<br>**AND TRACY PATRICK JOHNSON** | **CASE NO. 12-04298-8-JRL** |
| **THOMAS JAMES JOYCE, JR. AND**<br>**TRACY PALMER JOYCE** | **CASE NO. 12-04760-8-JRL** |
| **WAYNE RICHARD LITTLETON, JR.** | **CASE NO. 12-03485-8-JRL** |
| **NORMAN DOUGLAS MCLEOD, II** | **CASE NO. 12-03158-8-JRL** |
| **CHARLES WILLIAM MARSALA** | **CASE NO. 12-03275-8-JRL** |
| **VALENCIA MONIQUE MITCHELL** | **CASE NO. 12-04784-8-JRL** |
| **HERMAN ORTEGA** | **CASE NO. 12-00315-8-JRL** |

1

| | |
|---|---|
| **SUSAN CLARK PARKER** | **CASE NO. 12-04748-8-JRL** |
| **JUSTIN DANIEL STAHL AND ALLISON CAROLE STAHL** | **CASE NO. 12-03603-8-JRL** |
| **JOHN WILLIAM STIVER, JR. AND KATHI GAY WORTH-STIVER** | **CASE NO. 12-00636-8-JRL** |
| **CHANDA LATHISA VANN** | **CASE NO. 12-00626-8-JRL** |
| **ERNESTINE WEBB** | **CASE NO. 12-04329-8-JRL** |
| **BLAKE EVERETT WILLIAMS** | **CASE NO. 12-03602-8-JRL** |

**CHAPTER 13**

**DEBTORS.**

## ORDER

These cases are before the court on the trustee's motions to dismiss for the debtors' failure to contribute their projected disposable income to payment of unsecured creditors pursuant to 11 U.S.C. § 1325(b)(1)(B), to which the debtors have objected. A hearing on the matters was held on December 10, 2012, at 2:00 p.m. in Raleigh, North Carolina. Because resolution of this issue directly impacts the functioning of chapter 13 cases in this district, the court opened the hearing to all interested parties and authorized the filing of amicus briefs prior to the hearing.

## BACKGROUND

In the above-captioned cases, the debtors filed voluntary petitions for relief under chapter 13 of the Bankruptcy Code in the Eastern District of North Carolina. In each case, John F. Logan ("trustee") was appointed as the chapter 13 trustee. Of the nineteen cases specifically before this court, roughly half propose plans that span the entire applicable commitment period. The other half propose plans for less than the applicable commitment period; for example, three above-median

2

income debtors proposed plans of thirty-six months in length as opposed to the full sixty months.

All nineteen plans contain the following or substantially similar language, which is commonly

known as "early termination language":

> This Chapter 13 plan will be deemed complete and shall cease and a discharge shall
> be entered, upon payment to the Trustee of a sum sufficient to pay in full: (A)
> Allowed administrative priority claims, including specifically the Trustee's
> commissions and attorneys' fees and expenses ordered by the Court to be paid to the
> Debtor's Attorney, (B) Allowed secured claims (including but not limited to
> arrearage claims), excepting those which are scheduled to be paid directly by the
> Debtor "outside" the plan, (C) Allowed unsecured priority claims, (D) Cosign protect
> consumer debt claims (only where the Debtor proposes such treatment), (E) Post-
> petition claims allowed under 11 U.S.C. § 1305, (F) The dividend, if any, required
> to be paid to non-priority, general unsecured creditors (not including priority
> unsecured creditors) pursuant to 11 U.S.C. § 1325(b)(1)(B), and (G) Any extra
> amount necessary to satisfy the "liquidation test" as set forth in 11 U.S.C.
> §1325(a)(4).

This language allows early termination upon the payment of allowed secured, priority, and

administrative claims and the payment of any required dividend to non-priority unsecured creditors

under § 1325(b)(1)(B).  Current precedent in the Eastern District of North Carolina clearly permits

an above-median debtor, with zero or negative projected disposable income, to propose and confirm

a chapter 13 plan with a fixed duration subject to early termination.  See, e.g., Musselman v. eCast

Settlement Corp. (In re Musselman), 394 B.R. 801 (E.D.N.C. 2008); In re Alexander, 344 B.R. 742,

750–51 (Bankr. E.D.N.C. 2006).

The trustee takes issue with this practice, the early termination language, and the plans

proposing a term less than the full applicable commitment period, on the grounds that all of the

debtors' projected disposable income to be received in the applicable commitment period will not

be paid to unsecured creditors in contravention of § 1325(b)(1)(B) in a case that terminates early.

Where a debtor terminates his plan early by paying what is required under the plan, the debtor will

no longer have those monthly payments to make.  This "increase" in income due to the lack of

monthly payments, the trustee argues, creates disposable income, which must be devoted to the

payment of unsecured creditors.  Moreover, if a debtor proposes a plan that lasts less than the

applicable commitment period, the decrease of monthly expenses due to the early termination of

plan payments, must be accounted for in the calculation of projected disposable income at the time

of confirmation.  The trustee summarizes his argument as follows:

> In those cases in which it is known or virtually certain at the time of confirmation
> that a debtor's regularly scheduled plan payments will be made to pay all
> administrative, unsecured priority, and non-long-term secured claims proposed to be
> paid through the debtor's plan in full prior to the expiration of the applicable
> commitment period . . . projected disposable income now exists . . . for the remainder
> of the uncompleted applicable commitment period to be distributed [to allowed
> unsecured creditors].

Relying on the Supreme Court's decision in Hamilton v. Lanning, 560 U.S. ___, 130 S. Ct. 2464,

177 L. Ed. 2d 23 (2010), the trustee argues that the court must account for this change in the debtors'

circumstances, which is known or virtually certain to exist at the time of confirmation, when their

proposed plans terminate prior to the expiration of the applicable commitment period.

## DISCUSSION

### A.  Projected Disposable Income

Upon the bankruptcy trustee's or an unsecured creditor's objection, a chapter 13 plan cannot

be confirmed unless the plan provides either for full repayment of unsecured claims or that "all of

the debtor's projected disposable income to be received in the applicable commitment period" be

paid to unsecured creditors. 11 U.S.C. § 1325(b)(1).  At issue is whether the disposable income

calculated at the time of filing is an accurate representation of projected disposable income when

the debtor proposes to pay the plan in less time than the applicable commitment period.

4

Recently, the Bankruptcy Court for the Central District of Illinois addressed the question of whether the disposable income calculation accurately reflected the debtors' projected disposable income when the debtors paid off a secured claim prior to the applicable commitment period running.  In re Moore, 482 B.R. 248 (Bankr. C.D. Ill. 2012).  That court held that the debtors' projected disposable income did not increase due to the paying off of the secured debt; therefore, the debtors did not need to "step up" their payments under the plan. Id. at 255–56.  Because this court finds Moore to be instructional to the cases at hand, a detailed recitation of the facts is useful.

In Moore, the chapter 13 debtors' Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C") showed that the above-median debtors were subject to a sixty-month applicable commitment period for the payment of their disposable income to unsecured creditors. Id. at 250.  Calculations from Form B22C determined that the debtors had $508.12 in projected monthly disposable income. Id. at 250-51.  The debtors filed a second amended chapter 13 plan which provided monthly payments of $800.00 for sixty months. Id.  To be paid through the plan were the following: the trustee's compensation, fees to the debtors' attorney, and payment of a $41,632.00 dividend to unsecured creditors. Id.  Two secured loans on automobiles were to be paid outside of the plan according to the original loan terms. Id.  American Express, an unsecured creditor, objected to confirmation on the grounds that the debtors were not committing all of their disposable income to the plan.  Similar to the trustee in the instant cases, American Express argued that the debtors should be required to "step up" their plan payments after the vehicle loans have been paid off.  Id.

The female debtor's testimony at confirmation established that the debtors owned a 2011 Honda Fit Sport ("2011 vehicle") and a 2007 Honda Fit Sport ("2007 vehicle"), both secured by

loans from American Honda Finance. Id. at 252. The debtors owed $21,490.00 on the 2011 vehicle and their monthly payment on that loan was $372.18. Id. At the time of filing, the debtors had 58 months left to pay on this debt. Id. As for the 2007 vehicle, the debtors owed approximately $2,831.00 and their monthly payment was $288.26. Id. At confirmation, the debtors had made the last monthly payment due for the 2007 vehicle. Id. On their Form B22C, the debtors listed the average monthly payments on these debts, calculated over a sixty-month term, to be $328.00 and $40.87. Id.

American Express objected to confirmation arguing that "even though the Debtors actually calculated their disposable income using their loan balances divided by 60, they [were] still obligated to step up their payments as the loans [were] paid." Id. at 253. With respect to the 2011 vehicle, the court rejected this argument and found that the debtors correctly calculated their disposable income.

> [The d]ebtors correctly divided the full amount due on each of their auto loans by 60 and deducted only those amounts at line 47 of Form B22C to calculate their disposable income. *Regardless of how they cash flow their direct payments to secured creditors, their resulting disposable income calculation is accurate and does not understate what is available or what they are required to pay.*

Id. (emphasis added).

In overruling American Express' objection, the court distinguished a series of cases where the debtors were required to step up their plan payments after completing 401(k) loan payments.

> In the 401(k) loan cases, debtors have usually deducted the full amount of their monthly loan payment from their monthly disposable income. See id. at 206; see also Nowlin v. Peake (In re Nowlin), 576 F.3d 258, 260-61 (5th Cir. 2009); In re Smith, 2009 WL 937144, at *3 (Bankr. C.D. Ill. Mar. 24, 2009). These loan payment deductions are frequently taken at line 31 of the Form B22C as mandatory employment deductions. But, line 31 allows the full monthly payment to be deducted regardless of how many months of payments remain due and does not require recalculation of a monthly amount based on the full plan term as is required

6

for secured debt at line 47. Thus, when a 401(k) loan will be paid off before the end of the plan term, taking the full monthly payment as a deduction tends to skew the disposable income calculation.

To remedy this problem, courts have required debtors to "step up" their payments after the 401(k) loans are paid. See Seafort, 437 B.R. at 213; Nowlin, 576 F.3d at 267; Smith, 2009 WL 937144, at *3. In essence, because debtors have lowered or "stepped down" their plan payments in the early plan years in order to make their direct loan payments, they are required to "step up" their plan payments in later years to fully account for their disposable income. But here, despite the Debtors' proposal to make their auto loan payments directly, they proposed no "step down" in payments to facilitate their ability to make those payments. Accordingly, they are not required to make a "step up" in payments when those loans are paid, and their failure to provide for such a "step up" is not a valid basis to object to confirmation.

Id.

Additionally, American Express relied on Lanning to argue "that because the Debtors are scheduled to complete their auto loan payments in particular future months, then the satisfaction of the loans during the Debtors' applicable commitment period is virtually certain to occur." Id. at 255. The court "wholly rejected" this argument, stating that "trying to project what will occur over the next 50 months with respect to these Debtors and this loan is a speculative venture and not one that can be done with any certainty whatsoever."[1] Id. at 256.

Generally, projected disposable income is calculated as of the date a case is filed. On the income side, "current monthly income" is determined by reference to the income received by a debtor during the six months preceding the filing. See 11 U.S.C. §§ 101(10A), 1325(b)(2). On the expense side, a debtor may deduct reasonable and necessary expenses which may be the debtor's actual expenses or, for

---

[1]The court in Moore acknowledged that another court agreed with the argument set forth by American Express. The Bankruptcy Court for the District of Hawaii found at a February 2012 confirmation hearing, that because auto loans would be paid in full in April 2012 the change of circumstances warranted an increase in projected disposable income. In re Montiho, 466 B.R. 539 (Bankr. D. Haw. 2012). Important to the court in Montiho was the fact that the auto loans would be paid off in two to three months. The Montiho court noted that Lanning might not have been implicated had the loans matured at a date further from the confirmation hearing. Id. at 541.

higher income debtors, must be determined at least in part, by reference to the IRS National and Local Standards. See 11 U.S.C. § 1325(b)(3). In Hamilton v. Lanning, the Supreme Court held that changes in a debtor's income or expenses not taken into account under the statutory formulas but which have occurred by the time of confirmation or are "virtually certain" to occur may be considered when calculating disposable income and confirming a plan. Lanning, 130 S. Ct. at 2478.

Id. at 255. No adjustment was needed "to the Debtors' disposable income calculation based on an expectation that the loan on their 2011 Honda [would] be paid in the 58th month of the applicable commitment period." Id. at 256.[2]

The facts of Moore are analogous to the cases before this court. Here, like the calculation in Moore, the debtors' calculations of monthly disposable income included a deduction for debt payments. The deduction was calculated taking the average monthly payment over the applicable commitment period. For example, on the official Form B22C, Line 47 prompts the filer to enter the average future payments on secured claims over sixty (60) months. Lines 49 and 50 require the same for prepetition priority claims and administrative expenses, respectively. A debtor is entitled to the maximum plan length of five (5) years provided by § 1322(d), to pay these claims in full. 11 U.S.C. § 1322(d).

Utilizing the calculations provided on Form B22C, debtors' disposable income is calculated based on these debts being spread out over the full applicable commitment period. If the debtors decide to pay a larger monthly payment over a shorter time, it does not follow that the disposable income calculation was incorrect. If that were the case, it would impose a penalty on the debtors

---

[2]Lanning did however, compel consideration of the change in circumstances with respect to the loan on the 2007 vehicle. Moore, 482 B.R. at 255. At the time of filing, the loan had eight months of payments remaining due but at the confirmation hearing the loan was fully paid. Id. Because the change had occurred by the time of confirmation the debtors were entitled to the deduction for the first eight months but not the last 52 months. Id.

for completing their plan and paying their plan obligations in less time than they were required.[3]

Similar to the debtors in <u>Moore</u>, who were not stepping down their plan payments in the beginning such that a step up was warranted after the auto loan was paid, the debtors in the cases before the court are not stepping down their plan payments either. In fact, these debtors are only eligible for early termination because they stepped up their plan payments so that they can complete the plan earlier. They should not be penalized for making larger payments than required.

<u>Lanning</u> does not necessitate a finding that the completion of a plan in less time than the applicable commitment period creates projected disposable income. <u>See</u> <u>Moore</u>, 482 B.R. at 255. <u>Lanning</u> acknowledges that there is a presumption that the mechanical approach accurately represents the projected disposable income of a debtor because "a person making a projection uses past occurrences as a starting point." 130 S. Ct. at 2475. Projected disposable income is determined "by calculating disposable income, and in most cases, nothing more is required." <u>Id.</u> Thus, <u>Lanning</u> only discredits the mechanical approach when the projection under that approach "does not accurately reflect 'income to be received' during [the applicable commitment] period." <u>Id.</u> at 2474 (citing <u>In re Nowlin</u>, 576 F.3d 258, 263 (5th Cir. 2009)).[4] If the debtor's current income is substantially higher or lower than the income that the debtor "predictably will receive during the plan period" than additional calculations are needed to determine the projected disposable income after the mechanical approach has been employed. Here though, the debtors are not receiving more

───────────────

[3] It would also result in circular reasoning. The calculation of disposable income leads, in part, to the plan payment amount, not the other way around. Here, the trustee argues that a plan payment amount which is higher than the minimum dictates whether there is projected disposable income.

[4] It is of note that the case cited here by the Supreme Court deals with the stepping down, and subsequently stepping up, of the plan payments in order to pay a 401(k) loan first.

disposable income during the applicable commitment period due to the simple fact that they are paying larger plan payments upfront. Therefore, the disposable income accurately reflects the projected disposable income. The mechanical approach is sufficient and no other steps are necessary. Lanning does not untether the calculation of projected disposable income from the statutory formula. See, e.g., In re Reed, 454 B.R. 790, 797 (Bankr. D. Or. 2011) ("After Lanning, I conclude that the mere fact that a debtor's Schedules I and J show a positive net monthly income or that a debtor proposes payments under the plan that exceed the disposable income number on Form B22C is not sufficient alone to allow deviation from the Form B22C disposable income in calculating projected disposable income. There must be evidence of changes (as compared to the Form B22C) that are known or virtually certain in either income or expenses."); see also Anderson v. Cranmer (In re Cranmer), 697 F.3d 1314, 1318 (10th Cir. 2012) (emphasizing that "Lanning made clear a debtor's disposable income is not only the starting point in calculating projected disposable income, but in most cases it is determinative." (citation omitted)); Coffin v. eCast Settlement Corp. (In re Coffin), 435 B.R. 780, 787 n. 14 (B.A.P. 1st Cir. 2010) ("The Supreme Court endorsed the forward looking approach, such that 'when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation.' Here, however, there has been no 'change'; accordingly, the Lanning holding does not seem to apply." (citations omitted)); In re Scott, 457 B.R. 740, 748 (Bankr. S.D. Ill. 2011) ("[F]ind[ing] no reason to depart from the method of calculating disposable income that is set forth in the Code and on Form B22C[]" because "the Trustee has not presented any evidence of changes in the debtors' financial situations such that they would warrant a departure from the mechanical approach, nor has he shown that the circumstances presented in

these cases are unusual in any way.").  Only a known or virtually certain future change in income or expenses, as defined therein, justifies a departure from the mechanical approach.

In cases in which there is no projected disposable income, the payment of other plan obligations in full in a period that is less than the applicable commitment period does not, without more, require a recalculation of projected disposable income.  See Moore, 482 B.R. at 255; Reed, 454 B.R. at 797.  This conclusion, however, presupposes that Lanning does not require the abandonment of the Alexander and Musselman analyses of the term "applicable commitment period," the issue to which the court now turns.

### B.  Applicable Commitment Period

The next issue before the court is  whether the term "applicable commitment period" in § 1325(b)(4) applies to debtors having zero or negative projected disposable income.  The trustee contends that the plain meaning of § 1325(b)(1) and (b)(4) requires, upon objection, that plans proposed by above-median-income debtors be sixty (60) months in duration, unless the plan proposes to repay unsecured creditors in full.  Utilizing Alexander, the debtors counter that they are not required to propose a sixty-month plan because the term "applicable commitment period" is inapplicable because they have no projected disposable income to pay to their general unsecured creditors.

The term "applicable commitment period" appears in two subsections of § 1325(b).  Section 1325(b)(1)(B), which prohibits confirmation of a debtor's plan over objection of the trustee or unsecured creditor "unless . . .  the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B).  Section 1325(b)(4) defines

"applicable commitment period" as follows:

> *For purposes of this subsection*, the "applicable commitment period"–
>
> (A) subject to subparagraph (B), shall be–
>
>> (i) 3 years; or
>>
>> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--
>>
>>> (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>>>
>>> (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>>>
>>> (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $625 per month for each individual in excess of 4 . . . .

11 U.S.C. § 1325(b)(4)(A) (emphasis added). Section 1325(b)(4)(B) adds that the applicable commitment period "may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4)(B). To calculate the debtor's applicable commitment period, the combined current monthly income of the debtor and the debtor's spouse, multiplied by twelve, is compared to the median family income for comparable households in the applicable state. 11 U.S.C. § 1325(b)(4)(A).[5] The applicable commitment period is not less than five years, if the combined current monthly income exceeds the median family income for comparable households. 11 U.S.C. § 1325(b)(4)(A)(ii)(I)–(II). Otherwise, the debtor's applicable commitment period is three years.

---

[5]The median family income for each state is reported by the Bureau of the Census. 11 U.S.C. § 101(39A).

12

11 U.S.C. § 1325(b)(4)(A)(I).

Despite the Bankruptcy Code providing a statutory formula for calculating the applicable commitment period, courts and commentators have disagreed over its interpretation, application and function.  See Danielson v. Flores (In re Flores), 692 F.3d 1021, 1027 (9th Cir. 2012) (indicating that "[t]he proper interpretation of the meaning and function of the 'applicable commitment period' has not been directly addressed by the Supreme Court."), rehearing en banc granted, No. 11–55452, 2012 WL 6618328 (9th Cir. Dec. 19, 2012); compare 8 Collier on Bankruptcy ¶ 1325.08[4][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012), and 6 Keith M. Lundin, CHAPTER 13 BANKRUPTCY, 3D ED. § 500.1 (2000 & Supp. 2006) ("The applicable commitment period does not require that the debtor actually make payments for any particular period of time.  Rather, it is the multiplier in a formula that determines the amount of disposable income that must be paid to unsecured creditors."), with Evan J. Zucker, The Applicable Commitment Period: A Debtor's Commitment to a Fixed Plan Length, 15 Am. Bankr. Inst. L. Rev. 687, 704 (2007) ("[G]iven the inconsistencies within section 1325(b), between section 1325(b)(4)(B) and section 1325(b)(1)(B), it is not clear from the text itself whether the language supports a temporal or monetary interpretation.").

The Sixth and Eleventh Circuits have adopted a temporal approach, which interprets the term "applicable commitment period" as establishing a minimum duration of the debtor's plan – disallowing confirmation of any proposed plan unless its length is equal to the applicable commitment period, regardless of whether the debtor has positive or negative projected disposable income.  See, e.g., Baud v. Carroll, 634 F.3d 327, 338 (6th Cir. 2011); Whaley v. Tennyson (In re Tennyson), 611 F.3d 873, 877–78 (11th Cir. 2010); Coop v. Frederickson (In re Frederickson), 545

F.3d 652, 660 & n. 6 (8th Cir. 2008), cert. denied, 556 U.S. 1129, 129 S. Ct. 1630, 173 L. Ed. 2d 997 (2009); In re King, No. 10–18139, 2010 WL 4363173, at *2 (Bankr. D. Colo. Oct. 27, 2010); Baxter v. Turner (In re Turner), 425 B.R. 918, 920–21 (Bankr. S.D. Ga. 2010); In re Moose, 419 B.R. 632, 635–36 (Bankr. E.D. Va. 2009); In re Meadows, 410 B.R. 242, 245–47 (Bankr. N.D. Tex. 2009); In re Brown, 396 B.R. 551, 554–55 (Bankr. D. Colo. 2008); In re Lanning, Nos. 06–41037, 06–41260, 2007 WL 1451999, at *7–8 (Bankr. D. Kan. May 15, 2007), aff'd, 380 B.R. 17 (10th Cir. B.A.P. 2007), aff'd, 545 F.3d 1269 (10th Cir. 2008), aff'd, Lanning, 130 S. Ct. at 2475; In re Kidd, 374 B.R. 277, 280 (Bankr. D. Kan. 2007); In re Nance, 371 B.R. 358, 369–70 (Bankr. S.D. Ill. 2007); In re Beckerle, 367 B.R. 718, 719–21 (Bankr. D. Kan. 2007); In re Casey, 356 B.R. 519, 527–28 (Bankr. E.D. Wash. 2006); In re Davis, 348 B.R. 449, 456–58 (Bankr. E.D. Mich. 2006).[6]

Conversely, under the multiplier approach, the applicable commitment period is construed as a multiplier of the debtor's total projected disposable income, yielding the total amount to be received by unsecured creditors under the plan.  See, e.g., In re Burrell, No. 08–71716, 2009 WL 1851104, at *3–5 (Bankr. C.D. Ill. June 29, 2009); Dehart v. Lopatka (In re Lopatka), 400 B.R. 433, 436–40 (Bankr. M.D. Pa. 2009); In re Williams, 394 B.R. 550, 566–570 (Bankr. D. Colo. 2008); In re Luton, 363 B.R. 96, 100 (Bankr. D. Ark. 2007); In re McGillis, 370 B.R. 720, 734–39 (Bankr. W.D. Mich. 2007); In re Mathis, 367 B.R. 629, 632–36 (Bankr. N.D. Ill. 2007); In re Swan, 368 B.R. 12, 24–27 (Bankr. N.D. Cal. 2007); In re Brady, 361 B.R. 765, 776–77 (Bankr. D.N.J. 2007); In re Fuger, 347 B.R. 94, 97–101 (Bankr. D. Utah 2006).  In Baud, the Sixth Circuit emphasized that the multiplier approach

---

[6]The Eighth Circuit and several bankruptcy courts adopting the temporal approach have not determined whether it applies to debtors with zero or negative projected disposable income. See, e.g., Frederickson, 545 F.3d at 660 & n. 6; In re Wirth, 431 B.R. 209, 213 (Bankr. W.D. Wis. 2010); In re Slusher, 359 B.R. 290, 300 n. 17 (Bankr. D. Nev. 2007).

> does not require the debtor to propose a plan that lasts for the entire length of the applicable commitment period; rather, as long as the plan provides for the payment of the monetary amount of disposable income projected to be received over that period, the court may confirm a plan that lasts for a shorter time.

634 F.3d at 337.  The multiplier approach should be distinguished from the mechanical approach to calculating a debtor's projected disposable income, which was rejected by the Supreme Court in favor of a forward-looking approach in circumstances "where changes in the debtor's income or expenses are known or virtually certain at the time of confirmation." Lanning, 130 S. Ct. at 2478; Baud, 634 F.3d at 337–38 (distinguishing the interpretation of a debtor's applicable commitment period from the calculation of a debtor's projected disposable income, the latter of which was addressed by the Supreme Court in Lanning).

Adopting a hybrid approach in Alexander, this court held that the term "applicable commitment period" does not apply to debtors with zero or negative projected disposable income. 344 B.R. at 750–51 (recognizing the applicable commitment period requirement as temporal, but only applicable to a debtor with projected disposable income); Musselman, 394 B.R. at 814 (affirming, after weighing the alternative approaches, the hybrid approach adopted by Alexander); see, e.g., Flores, 692 F.3d at 1037–38; In re Kagenveama, 541 F.3d 868, 875–78 (9th Cir. 2008), overruled on other grounds, Lanning, 130 S. Ct. at 2478; Reed, 454 B.R. at 802–03; In re Henderson, 455 B.R. 203, 213–14 (Bankr. D. Idaho 2011); In re Davis, 392 B.R. 132, 146 (Bankr. E.D. Pa. 2008); In re Brady, 361 B.R. 765, 776–77 (Bankr. D.N.J. 2007); In re Green, 378 B.R. 30, 39 (Bankr. N.D.N.Y. 2007); In re Lawson, 361 B.R. 215, 219–21 (Bankr. D. Utah 2007).

In Alexander, this court concluded that the term "applicable commitment period" is "ma[d]e relevant only with regard to the required payment of projected disposable income to unsecured creditors and . . . simply does not come into play where no projected disposable income must be

taken into account."  344 B.R. at 751.

> This is consistent with a plain reading of the Code.  Applicable commitment period appears in subsection (b) of § 1325.  First, in (b)(1)(B), it states that projected disposable income to be received in the applicable commitment period is to be applied to unsecured creditors.  Then, in (b)(4), it states For purposes of this subsection, the applicable commitment . . . is three or five years.  The applicable commitment period appears to be exclusively linked to subsection (b) of § 1325.  This conclusion is bolstered by § 1329(c), which references applicable commitment period in connection with § 1325(b)(1)(B).

Id. (internal citations and quotation marks omitted).  Alexander emphasizes that § 1322 and §1325 "establish a maximum plan length, but they do not require a minimum commitment period[,]" thereby allowing "a debtor with no projected disposable income . . . free[dom] to meet the other confirmation requirements of § 1322 and §1325 in whatever period of time he may feasibly do so." Id.; see 11 U.S.C. § 1322(d)(1), (2).  Supporting adoption of the hybrid approach was the plain language of the Bankruptcy Code and the reality that "there is no reason to extend plans artificially if there is no requirement of a dividend to be paid to unsecured creditors over time." Alexander, 344 B.R. at 750-51; accord Kagenveama, 527 F.3d at 998 ("There is no language in the Bankruptcy Code that requires all plans to be held open for the 'applicable commitment period.'  Section 1325(b)(4) does not contain a freestanding plan length requirement; rather its exclusive purpose is to define 'applicable commitment period' for purposes of the § 1325(b)(1)(B) calculation.").

The viability of the hybrid approach adopted in Alexander was affirmed by the district court in Musselman.  394 B.R. at 804.  On appeal from the bankruptcy court, Musselman addressed, inter alia, whether a debtor's applicable commitment period conclusively establishes the required plan duration, irrespective of the calculation of the debtor's projected disposable income. Id.  In Musselman, the court relied on the structure of § 1325(b) to conclude that the definition of applicable commitment period set forth in § 1325(b)(4) only applies to debtors with projected

16

disposable income and is inapplicable to those debtors with no projected disposable income.  Id. at 814.

The court finds itself in the same position as the Ninth Circuit in Flores.  In Flores, the Ninth Circuit was faced with a challenge to its prior decision in Kagenveama following the Supreme Court's decision in Lanning.  Flores, 692 F.3d at 1026–27.  In Kagenveama, the Ninth Circuit adopted the hybrid approach in interpreting the applicable commitment period and found the requirement "inapplicable to a plan submitted voluntarily by a debtor with no 'projected disposable income.'"  541 F.3d at 875.  With regard to the viability of its Kagenveama decision following Lanning, the Flores Court concluded that Lanning, which did not address the applicable commitment period, was not inconsistent with and did not overrule Kagenveama's adoption of the hybrid approach to interpreting the applicable commitment period.  Flores, 692 F.3d at 1030, 1037–38; accord Reed, 454 B.R. at 803.  After giving consideration to the separate conclusions reached by sister circuits, the Ninth Circuit observed that

> we do not write on a clean slate.  Instead, our analysis is constrained by our own prior authority, which we are bound to follow unless it is clearly irreconcilable with Lanning.  We are not convinced that Lanning has "undercut the theory or reasoning underlying [Kagenveama] in such a way that the cases are clearly irreconcilable." [Miller v. ]Gammie, 335 F.3d [889,] 900 [(9th Cir. 2003)] (emphasis added).  Thus, only the Supreme Court or an en banc panel of this court may revisit Kagenveama's holding regarding the applicable commitment period.

Flores, 692 F.3d at 1038.  The court finds the Flores Court's resolution and respect for its prior precedent in Kagenveama persuasive.  Because the prior precedent in Alexander and Musselman can be harmonized with Lanning and the other intervening authority,[7] the court will not reconsider

---

[7]As previously mentioned, Lanning did not address the proper interpretation of the term "applicable commitment period" in § 1325(b)(4) or its application to debtors with zero or negative projected disposable income.  See Flores, 692 F.3d at 1037 ("[C]onclud[ing] that the bankruptcy court erred in disregarding Kagenveama."); see also Reed, 454 B.R. at 802

or overrule the current precedent in the Eastern District of North Carolina, that the term "applicable commitment period" does not apply if a debtor has zero or negative projected disposable income. See, e.g., Flores,  692 F.3d at 1030; Reed, 454 B.R. at 802–803; Alexander, 344 B.R. at 751; Musselman, 394 B.R. at 814.

Based on the record and consideration of its decision in Alexander, the trustee's motions to dismiss are denied because the term "applicable commitment period" applies only to the payment of projected disposable income, and is irrelevant in the cases before the court because the debtors have zero or negative projected disposable income.  In accordance with Alexander and Musselman, the term "applicable commitment period" refers to the time in which the debtor must pay projected disposable income to the trustee, not to a minimum plan duration.  Alexander, 344 B.R. at 750–51; Musselman, 394 B.R. at 814; see Kagenveama, 541 F.3d at 876 (concluding that "only 'projected disposable income' is subject to the 'applicable commitment period' requirement.  Any money other than 'projected disposable income' that the debtor proposes to pay does not have to be paid out over the 'applicable commitment period.'"(internal citations omitted)).  Because the debtors in the instant cases do not have any projected disposable income, nothing will be received in the applicable commitment period to make payments to unsecured creditors under the plan.  Alexander, 344 B.R. at 751; accord Musselman, 394 B.R. at 814; Reed, 454 B.R. at 803 ("Where projected disposable income is zero or less, it is hard to see how the statute requires any payment to unsecured creditors. Zero times 60 months is still zero.  Although debtors might be required to remain in chapter 13 for the full 60 months, with the possibility that the plan might be modified 'before the completion of

_____

(emphasizing that "[t]he statutory language of the provisions considered in the Supreme Court means-test cases [Lanning] is different from the statutory langauge at issue in the applicable commitment period portion of Kagenveama.").

payments under' the plan, § 1329(a), it is not clear that the statute requires that any particular amount be paid to unsecured creditors." (citing <u>Baud</u>, 634 F.3d at 353–57)).  This is consistent with the structure of § 1325(b) and underlying purposes of chapter 13 and the Bankruptcy Code.  <u>See</u>, <u>e.g.</u>, <u>Alexander</u>, 344 B.R. at 751 (emphasizing that the hybrid approach to interpreting the "applicable commitment period" was "consistent with a plain reading of the [Bankruptcy] Code."); <u>Musselman</u>, 394 B.R. at 814 (utilizing the structure of § 1325(b) to adopt the hybrid approach taken in <u>Alexander</u>); <u>accord</u> <u>Davis</u>, 392 B.R. at 143 (observing that "in allowing earlier repayment in full, Congress was increasing the opportunity for debtors to receive a bankruptcy discharge and a fresh start: one of the underlying purposes of the Bankruptcy Code." (citing <u>Swan</u>, 368 B.R. at 24–26); <u>Kagenveama</u>, 541 F.3d at 876 ("There is no language in the Bankruptcy Code that requires all plans to be held open for the 'applicable commitment period.'").[8]

The court is aware of the legitimate policy concerns raised by the trustee regarding changes in a debtor's financial circumstances following confirmation and early termination, but before expiration of the applicable commitment period.  These concerns, however, are aptly addressed by the Bankruptcy Code, which allows modification of a debtor's plan should the debtor experience an increase in income "before the completion of payments under such plan[.]"  11 U.S.C. § 1329(a);[9] <u>see</u>, <u>e.g.</u>, <u>Kagenveama</u>, 541 F.3d at 877 (finding persuasive the conclusion that "§ 1322(d) would be superfluous if § 1325(b)(4) set the length of the plan."  (citation omitted)); <u>Reed</u>, 454 B.R. at 803

---

[8]<u>See</u> <u>Beaulieu v. Ragos (In re Ragos)</u>, 700 F.3d 220, 227 (5th Cir. 2012) (concluding that the plans, proposed by debtors with negative projected disposable income, fully complied with the Bankruptcy Code and, thus, were not proposed in bad faith because "Debtors are not in bad faith merely for doing what the [Bankruptcy] Code permits them to do.").

[9]Nothing in this decision prevents in the debtor, the trustee, or an unsecured creditor from employing § 1329 to request a modification of the plan following confirmation.

("[P]oint[ing] out that, even if the trustee were correct that the applicable commitment period for above-median-income debtors who have no projected disposable income is five years, such debtors would not necessarily be required to continue paying the proposed monthly plan payment amount for the entire five years."); Henderson, 455 B.R. at 214.

## CONCLUSION

Based on the foregoing and for the reasons given, the trustee's motions to dismiss the debtors' cases are **DENIED.**[10]

## END OF DOCUMENT

---

[10]It is unclear from the parties' arguments whether either takes the position that the early termination language violates or is consistent with Alexander by permitting termination prior to the expiration of the temporal sixty-month applicable commitment period imposed on above-median debtors with projected disposable income. Alexander is clear, the applicable commitment period is temporal, requiring an above-median debtor with projected disposable income to propose a plan with a duration of sixty (60) months, unless the plan proposes to repay unsecured creditors in full. 344 B.R. at 750–51 (stating that "in a case involving an above-median income debtor with projected disposable income, the applicable commitment period is 5 years."). Therefore, to the extent that the early termination language propounded by the debtors would also allow early conclusion of a plan with projected disposable income, that language is disapproved.